O

# United States District Court
# Central District of California

GERBER PLUMBING FIXTURES, LLC,

Plaintiff,

v.

AMERIFREIGHT, INC., d/b/a/
LOGISTICS TEAM; 19201 REYES, LLC,

Defendants.

Case No. 2:15-cv-04146-ODW(RAO)

**ORDER DENYING PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF AGAINST DEFENDANT AMERIFREIGHT, INC. [3] AND GRANTING PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF AGAINST DEFENDANT 19201 REYES, LLC [33]**

## I.   INTRODUCTION

There are two applications for temporary restraining orders pending before the Court.  The first was filed on June 2, 2015 by Plaintiff Gerber Plumbing  Fixtures, LLC ("Gerber") against Defendant Amerifreight, Inc., d/b/a Logistics  Team ("Logistics Team").  (ECF No. 3.)  The second was filed on June 11, 2015 by Gerber against Defendant 19201 Reyes, LLC ("19201 Reyes").  (ECF No. 33.)  Both pending applications also seek preliminary injunctive relief.   This dispute arises out of Gerber's inability to access a warehouse that houses millions of dollars of Gerber's product inventory.  For the reasons discussed below, the Court **DENIES** Gerber's request for equitable relief against Logistics Team (ECF No. 3) and **GRANTS** Gerber

preliminary injunctive relief against 19201 Reyes (ECF No. 33).

## II.   BACKGROUND

Gerber, an Illinois company, manufactures and distributes residential and commercial plumbing products.  (ECF No. 30 ["FAC"] ¶ 9.)  Logistics Team, a California company, provides warehousing and logistics services.  (*Id.* ¶ 16.)  In January 2012, Gerber and Logistics Team entered into a five-year contract whereby Logistics Team would provide warehouse storage and management for Gerber's inventory arriving at the Port of Los Angeles.  (*Id.* ¶¶ 16, 17.)  Logistics Team manages $7.6 million of product inventory for Gerber in a warehouse located in Los Angeles county.  (*Id.* ¶ 21.)

In March 2015, a dispute arose between Gerber and Logistics Team over an unpaid debt to a third party.  (*Id.* ¶ 33.)  Logistics Team informed Gerber that Gerber must move its inventory out of the warehouse by June 30, 2015.  (*Id.*)  The parties engaged in a series of e-mails and phone calls over the next two months regarding breach of contract and unpaid debts, none of which are relevant to the pending motions.  On June 1, 2015, Gerber representatives went to the warehouse to conduct an inventory and prepare for the June 30, 2015 move-out date.  (*Id.* ¶¶ 45–46.)  However, Logistics Team representatives informed Gerber that it would not facilitate the move and it was locking the warehouse immediately.  (*Id.* ¶ 47.)

On June 2, 2015, Gerber filed the Complaint against Logistics Team as well as an Application for a Temporary Restraining Order ("First TRO Application").  (ECF Nos. 1, 3.)  Gerber, claiming that Logistics Team was holding millions of dollars' worth of inventory hostage, sought immediate and preliminary injunctive relief against Logistics Team for access to the warehouse.  (ECF No. 3.)  Gerber alleged that it was losing hundreds of thousands of dollars in unfulfilled contracts as well as irreparable goodwill.  (*Id.*)  The Court set a hearing for June 9, 2015.  (ECF No. 15.)  On June 5, 2015, Logistics Team filed an Opposition to the First TRO Application.  (ECF No. 23.)   In its Opposition, Logistics Team argued that it voluntarily

surrendered possession of the warehouse to its landlord, 19201 Reyes, when it missed two monthly rent payments and received a notice of default.  (*Id.* at 2.)  Logistics Team argued that since it no longer had access to the warehouse, any order issued against it would not provide any relief to Gerber.  (*Id.*)  At the hearing on June 9, 2015, nothing was resolved as Logistics Team ensured the Court that it no longer had any access to Gerber's inventory.  (ECF No. 29.)  The Court did not rule on the First TRO Application at that time.

On June 11, 2015, Gerber filed the First Amended Complaint adding 19201 Reyes as a defendant to the case.  (ECF No. 30.)  That same day, Gerber also filed its second Application for Temporary Restraining Order ("Second TRO Application"), this time seeking equitable relief against 19201 Reyes.  (ECF No. 33.)  Gerber's Second TRO Application seeks immediate and preliminary injunctive relief against 19201 Reyes in the form of access to the warehouse.  (*Id.*)  Gerber requests an order from the Court that allows it access to its inventory at 19201 Reyes's warehouse over fourteen days in order to fulfill orders, conduct a physical inventory, and move 290 truckloads of inventory.  (ECF No. 33-2.)  The Court set a hearing on the Second TRO Application for June 18, 2015.  (ECF No. 36.)

On June 16, 2015 19201 Reyes filed an Opposition to the Second TRO Application.  (ECF No. 39.)  All parties in this dispute were present at the June 18, 2015 hearing.

## III.   LEGAL STANDARD

"The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction."  *Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).  A court may only grant such relief "upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  To prevail, the moving party must show:  (1) a likelihood of success on the merits; (2) a likelihood that the moving party will suffer irreparable harm absent preliminary injunctive relief; (3) that

1   the balance of equities tips in the moving party's favor; and (4) that preliminary
2   injunctive relief is in the public interest (the "*Winter* factors"). *Id.* at 20. "Under
3   *Winter*, plaintiffs must establish that irreparable harm is *likely*, not just possible, in
4   order to obtain a preliminary injunction." *Alliance for the Wild Rockies v. Cottrell*,
5   632 F.3d 1127, 1132 (9th Cir. 2011) (original emphasis).   In the Ninth Circuit,
6   "'serious questions going to the merits' and a hardship balance that tips sharply
7   toward the plaintiff can [also] support issuance of an injunction, assuming the other
8   two elements of the *Winter* test are also met."   *Id.* at 1132, 1135 (holding that the
9   "sliding scale" test remains viable "so long as the plaintiff also shows that there is a
10  likelihood of irreparable injury and that the injunction is in the public interest").

11          Injunctions are classified as either "mandatory" or "prohibitory" depending on
12  the effect of the enjoined party.   Courts are generally more cautious when issuing
13  mandatory preliminary injunctions that would alter the status quo by commanding
14  some positive act from one of the parties. *Dahl v. HEM Pharms. Corp.*, 7 F.3d 1399,
15  1403 (9th Cir. 1993).   Such relief is "subject to a heightened scrutiny and should not
16  be issued unless the facts and law clearly favor the moving party." *Id.*   Mandatory
17  injunctive relief is "particularly disfavored" and will not be granted unless extreme or
18  very serious harm will result, not capable of compensation in damages, if the
19  injunction does not issue.   *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH &*
20  *Co.*, 571 F.3d 873, 879 (9th Cir. 2009).

21                                    **IV.   DISCUSSION**
22  **A.   Equitable Relief Against Logistics Team**

23          It is clear that the Court can no longer issue an injunction against Logistics
24  Team.   Logistics Team voluntarily surrendered all rights and control over the
25  warehouse, and can no longer provide Gerber access to its inventory.   Gerber is still
26  allegedly suffering irreparable harm, and that harm will continue whether the Court
27  enjoins Logistics Team or not.   Thus, preliminary injunctive relief against Logistics
28  Team is improper. *See Winter*, 555 U.S. at 20.

4

**B.      Equitable Relief Against 19201 Reyes**

A preliminary injunction against 19201 Reyes, however, is appropriate.  The Court will discuss each of the *Winter* factors.

**1.      First Factor:  Likelihood of Success on the Merits**

In its First Amended Complaint, Gerber alleges that 19201 Reyes is liable for conversion of its inventory.  (ECF No. 30.)  To succeed on a claim for conversion, a plaintiff must establish that it (1) has an ownership right to the property, (2) the defendant possesses the property in a manner inconsistent with the plaintiff's rights, and (3) damages.  *See Regent Alliance Ltd. v. Rabizadeh*, 231 Cal. App. 4th 1177, 1181 (2014).  Gerber and 19201 Reyes do not dispute that Gerber owns its inventory and that the inventory is in 19201 Reyes's warehouse.  19201 Reyes concedes that it has possession of Gerber's inventory.  19201 Reyes, however, argues that Gerber cannot succeed on its conversion claim because it is entitled to civil immunity pursuant to California Civil Code § 1993.  (Opp'n 4.)  This statute provides landlords an "*optional* procedure for the disposition of property that remains on the premises after a tenancy of commercial real property has terminated and the premises have been vacated by the tenant."  Cal. Civ. Code § 1993.02(a) (emphasis added).  The procedures in § 1993 are designed to protect landlords when two or more parties claim ownership of left-behind property or the true owner is unknown.  *See* Cal. Civ. Code §§ 1993.03(a)–(c).  19201 Reyes claims that it "intends" to comply with the procedures in § 1993, but does not provide any proposed date for commencing the procedures.  It merely states that "its current intention is to give notice to all known claimants, and to auction off any items."  (ECF No. 39 at 7.)

19201 Reyes is severely misguided on a number of issues.  First, § 1993 is an optional procedure and the Court is not required to allow 19201 Reyes to use such procedures.  With only one party making a claim to the inventory, the application of § 1993 is nonsensical.  The optional procedures are intended to facilitate the orderly distribution of *abandoned* property with unknown ownership claims and an ill-

informed landlord.  *See Republic Bank, Inc. v. Ethos Envtl., Inc.*, 2013 WL 321692, No. 12-cv-2654, *2–*3 (S.D. Cal. Jan. 28, 2013) (applying § 1993 when previous tenant clearly abandoned property).   Here, however, the property was not truly abandoned when Logistics Team absconded all of its contractual duties as Gerber still maintained title and all parties are aware of the uninterrupted chain of ownership belonging to Gerber.   Second, there is clearly only one party with a claim to the property in 19201 Reyes's warehouse—Gerber.   19201 Reyes has not provided any evidence that any other party has made a claim.   Instead, it merely asserts that Gerber's customers with purchase orders have ownership claims to the property in the warehouse.   (*Id.*)   This notion runs afoul of all basic contract law principles and cannot serve as a basis for proving that there is more than one party with ownership claims to Gerber's inventory.  *See* U.C.C. 2-503(1) ("Tender of deliver requires that the seller put and hold conforming goods at the buyer's disposition and give the buyer notification reasonably necessary to enable him to take delivery.").   Gerber's customers do not yet own the products they purchased from Gerber, and 19201 Reyes's assertion otherwise is disingenuous.

19201 Reyes is currently in possession of $7.6 million in Gerber's inventory and is refusing demands from Gerber to surrender the inventory.  19201 Reyes cannot rely on optional statutory procedures or erroneous statements of contract law to avoid liability for conversion.  This factor tips in favor of Gerber.

### 2.     Second Factor:  Irreparable Injury Absent Injunction

Gerber claims that it is unable to fill customer contracts, is losing customer orders, and is losing goodwill.  (ECF No. 34 at 8.)   19201 Reyes responds that "personal property is not being harmed sitting in a warehouse" and Gerber failed to assert that lost sales "would even yield a positive net profit."  (ECF No. 39 at 6.)

19201 Reyes's arguments are lazy and legally unsupported.  It failed to refute Gerber's claim that it is losing future contracts and goodwill, both of which are recognized as irreparable injuries.  *Ticketmaster L.L.C. v. RMG Technologies, Inc.*,

507 F. Supp. 2d 1096, 1115 (C.D. Cal. 2007).  Since 19201 Reyes fails to rebut Gerber's alleged irreparable injuries, this factor tips in Gerber's favor.

### 3.   Third Factor:  Balance of the Equities

Gerber alleges that its entire supply chain is disrupted and it is losing thousands of dollars while 19201 Reyes continues to prohibit access.  (ECF No. 34 at 12–13.) 19201 Reyes responds that the harm it might suffer in opening its warehouse is the potential liability to Gerber's customers that have already placed orders.  (ECF No. 39 at 6.)  As discussed *supra*, Gerber is the sole owner of its inventory within 19201 Reyes's warehouse and 19201 Reyes is not liable to unidentified third parties should it allow Gerber to remove its inventory.  19201 Reyes identifies no other potential harm by merely letting Gerber onto its property for several weeks.  This factor shifts sharply in favor of Gerber.

### 4.   Fourth Factor:  Public Interest

There is no public interest at issue in this case.  This is a private dispute between two companies.  If anything, the public has an interest in the continued flow of commerce, which does not include locking warehouse doors and auctioning off property clearly belonging to another entity.  Thus, all four *Winter* factors weigh in favor of granting Gerber preliminary injunctive relief.  There is a "clear showing" that Gerber is entitled to such relief.  *Winter*, 555 U.S. at 22.

## C.   Mandatory Injunctive Relief

The Court is aware that mandatory injunctions are "particularly disfavored" in this Circuit.  *Marlyn Nutraceuticals*, 571 F.3d at 879.  However, the facts regarding the physical location and ownership of Gerber's inventory is undisputed, and the law clearly favors relief for Gerber.  *See Dahl*, 7 F.3d at 1403.  The Court has no reservation in ordering 19201 Reyes to open its doors for two to three weeks.

## V.   CONCLUSION

Preliminary injunctive relief in this case is appropriate because all four *Winter* factors tip sharply in favor of Gerber.  The Court notes that nearly every argument

from 19201 Reyes is frivolous and made in bad faith. The Court is yet to determine why 19201 Reyes is bound and determined to keep Gerber from its inventory, but that consideration will only be relevant in the damages phase of this litigation or if 19201 Reyes violates this preliminary injunction Order. 19201 Reyes is strongly advised to comply with this Order.

For the reasons stated above, the Court hereby **DENIES** all of Gerber's equitable requests for relief against Logistics Team (ECF No. 3), and **GRANTS** Gerber's request for preliminary injunctive relief against 19201 Reyes (ECF No. 33). The Court hereby **ORDERS** as follows:

(1) Effective immediately, Defendant 19201 Reyes, LLC shall grant Plaintiff Gerber Plumbing Fixtures, LLC, access to its warehouse located at 19201 South Reyes Ave., Ranch Dominguez, California 90221, on a twenty-four (24) hour basis for a minimum of five (5) calendar days for the purposes of allowing Plaintiff Gerber Plumbing Fixtures, LLC, to conduct an inventory and remove all products subject to pending purchase orders;

(2) Once Plaintiff Gerber Plumbing Fixtures, LLC, completes the move for all pending purchase orders and other essential inventory, Defendant 19201 Reyes, LLC shall provide Plaintiff Gerber Plumbing Fixtures, LLC, regular business-hour access (7:00 a.m to 5:00 p.m.) to its warehouse for at least ten (10) consecutive calendar days to allow Plaintiff Gerber Plumbing Fixtures, LLC, to remove its remaining inventory;

(3) Defendant 19201 Reyes, LLC shall provide Plaintiff Gerber Plumbing Fixtures, LLC, full and complete access to twelve (12) loading docks and all necessary parking and maneuvering space on its property in order to allow Plaintiff Gerber Plumbing Fixtures, LLC, to move all inventory from the warehouse;

(4) Defendant 19201 Reyes, LLC shall not, under any circumstance, interfere with orderly movement of Plaintiff Gerber Plumbing Fixtures, LLC's trucks and equipment during the move;

(5) No bond is necessary;

1    (6) The parties shall file, in writing, a joint report no later than **July 3, 2015**,

2  notifying the Court on the status of the move.

3    **IT IS SO ORDERED.**

4

5    June 18, 2015

6

7    _____

8    **OTIS D. WRIGHT, II**
     **UNITED STATES DISTRICT JUDGE**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28